UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
NICOLE TRIZIA SALONDRO ESPLANA,
CHRISTIAN GABRIEL GAERLAN LEE, and
NIKKI ELLINE GERVACIO SEBASTIAN,                            **COLLECTIVE AND**
individually and on behalf of all others similarly          **CLASS ACTION**
situated,                                                    **COMPLAINT**

                                    Plaintiffs,             Plaintiffs Demand a Jury

                -against-


PRIME LEADERS HEALTH SERVICES, INC.
and GEORGE F. TAWDROS,

                                    Defendants.
---------------------------------------------------------------X

        Plaintiffs Nicole Trizia Salondro Esplana, Christian Gabriel Gaerlan Lee, and Nikki

Elline Gervacio Sebastian, by their undersigned attorneys, on behalf of themselves and all others

similarly situated, as and for their complaint against defendants Prime Leaders Health Services,

Inc. and George F. Tawdros, allege as follows:

        1.      This is an action for damages and other remedies for violations of the Trafficking

Victims Protection Act (TVPA), 18 U.S.C. § 1589 *et seq.*, the Fair Labor Standards Act (FLSA),

29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law, N.Y. Lab. L. §§ 190, *et seq.*, and for

breach of contract under New York law.

        2.      Defendant George Tawdros is a foreign labor recruiter who owns and operates

defendant Prime Leaders Health Services, Inc. without regard to corporate formalities or the

wage and hours laws.  Tawdros and his company recruited plaintiffs from the Philippines to

work for his company and its clients as physical therapists.  Once the plaintiffs began working

for Tawdros and his company in this country, he failed to pay them the compensation required

by their employment contracts, failed to pay them for all the hours they worked, failed to pay

them the required overtime wage rates, and failed to give them the required wage notices and statements.  To keep the plaintiffs from leaving, Tawdros threatened them with serious financial harm, including threatening that they would have to pay him and his company $20,000 each to terminate their contracts.

3.    While Tawdros tries to justify the $20,000 contract termination penalty as a form of damages, there is no basis for that claim.  In fact, Tawdros did not pay the filing fees for plaintiffs' immigration petitions and applications even though the contracts required him to "take all reasonable steps" to obtain legal status for plaintiffs to work in this country.  In addition, Tawdros engaged in immigration fraud and jeopardized the plaintiffs' immigration status by providing one employment contract to U.S. Embassy officials to obtain the necessary visas, while actually paying the plaintiffs under a different contract.

4.    Plaintiffs bring this action as a class action to recover damages and other remedies for the defendants' violations of the Trafficking Victims Protection Act and New York law, and as a collective action to recover damages and other remedies for the defendants' violations of the FLSA.  On behalf of themselves and all other physical therapists from the Philippines employed by the defendants at any time since September 3, 2014, plaintiffs seek a judgment against each defendant, jointly and severally, for:  compensatory and punitive damages for violations of the TVPA; compensatory and liquidated damages for violations of the FLSA and the New York Labor Law; compensatory damages for breach of contract; pre- and post-judgment interest at the statutory rate of 9% on all damages awarded for violations of New York laws; a declaration that the $20,000 contract termination fee is unenforceable under the TVPA, the Anti-Peonage Law, 42 U.S.C. § 1994, and New York law; an award of reasonable attorneys' fees and costs as

authorized by 18 U.S.C. § 1595(a), 29 U.S.C. § 216(b), and New York Labor Law § 198; and such other relief as the Court deems just and proper.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1595(a) (civil trafficking), and 29 U.S.C. § 216(b) (FLSA).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, because the state law claims form part of the same case or controversy as the federal law claims.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this District.

## The Parties

7.      Plaintiff NICOLE TRIZIA SALONDRO ESPLANA ("Esplana") is a physical therapist licensed by the State of New York.  She is employed by the defendants as a non-exempt employee.  She is a citizen of the Philippines and resides in Queens County, New York.

8.      Plaintiff CHRISTIAN GABRIEL GAERLAN LEE ("Lee") is a physical therapist licensed by the State of New York.  He is employed by the defendants as a non-exempt employee.  He is a citizen of the Philippines and resides in Queens County, New York.

9.      Plaintiff NIKKI ELLINE GERVACIO SEBASTIAN ("Sebastian") is a physical therapist licensed by the State of New York.  She is employed by the defendants as a non-exempt employee.  She is a citizen of the Philippines and resides in Queens County, New York.

10.    Defendant PRIME LEADERS HEALTH SERVICES, INC. ("Prime Leaders") is a for-profit corporation organized under the laws of the State of New York with a principal place of business at 68-60 Austin Street, Suite 307, Forest Hills, New York.

11.    Defendant GEORGE F. TAWDROS ("Tawdros") is the owner and President of the corporate defendant.  Upon information and belief, he is one of the ten largest owners of the corporate defendant and resides in Nassau County, New York.

12.    Defendant Tawdros exercised complete domination and control of defendant Prime Leaders in respect to the conduct alleged in this complaint, including violations of the Trafficking Victims Protection Act designed to coerce the plaintiffs and other Filipino physical therapists to continue working notwithstanding the defendants' failure to pay them the wages required by their contracts and state and federal laws.

13.    Defendant Tawdros used his complete domination and control of defendant Prime Leaders to commit wrongs against the plaintiffs and other Filipino physical therapists, including violations of the Trafficking Victims Protection Act.

14.    Defendants Tawdros and Prime Leaders are associated in fact and comprise a venture as that term is used in the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589 and 1595.

**Facts Relevant to All Claims**

15.    Defendants are in the business of recruiting physical therapists from the Philippines and placing them to work at their clients' facilities.

16.    Defendants require the foreign physical therapists to sign a standard employment contract that promises them a base salary, a paid vacation, 10 paid sick days, and 6 paid holidays.

17.    In their standard employment contract, the defendants promise to take all reasonable steps to ensure that the employees obtain the relevant authorizations to work legally in this country.

18.    Payment of fees for immigration petitions and applications in one of the steps necessary to obtain the relevant authorizations to work in this country.

19.    Plaintiff Esplana signed the defendants' standard employment contract.  The contract was counter-signed by defendant Tawdros as President of defendant Prime Leaders.

20.    Plaintiff Lee signed the defendants' standard employment contract.  The contract was counter-signed by defendant Tawdros as President of defendant Prime Leaders.

21.    Plaintiff Sebastian signed the defendants' standard employment contract.  The contract was counter-signed by defendant Tawdros as President of defendant Prime Leaders.

22.    The defendants did not pay the fees for immigration petitions and applications that were necessary to obtain the relevant authorizations for plaintiffs to work in this country.

23.    Plaintiff Esplana was required to pay fees for immigration petitions and applications that were necessary to obtain the relevant authorizations to work in this country.

24.    Plaintiff Lee was required to pay fees for immigration petitions and applications that were necessary to obtain the relevant authorizations to work in this country.

25.    Plaintiff Sebastian was required to pay fees for immigration petitions and applications that were necessary to obtain the relevant authorizations to work in this country.

26.    Upon information and belief, the defendants had a policy and practice of not paying the fees for immigration petitions and applications that are necessary for their Filipino physical therapists to obtain the relevant authorizations to work in this country.

27.     Once the plaintiffs started working, the defendants failed to pay them the salary required by their employment contracts.

28.     Instead of a salary, the defendants paid each plaintiff an hourly wage.

29.     The hourly wage rate paid to each plaintiff was less than the amount necessary to provide them with the required salary amount.

30.     The defendants failed to pay the plaintiffs for major holidays.

31.     The defendants failed to pay the plaintiffs for sick days.

32.     The defendants failed to pay the plaintiffs for all the hours they worked.

33.     The defendants paid each plaintiff only for the hours they worked at one of the defendants' client facilities.

34.     The defendants did not pay the plaintiffs for required training and orientation.

35.     The defendants did not pay the plaintiffs for time spent waiting for an assignment to a client facility.

36.     The defendants did not pay the plaintiffs one-and-one-half times their regular wage rate when they worked more than 40 hours during a workweek.

37.     The defendants did not pay plaintiff Esplana one-and-one-half times her regular wage rate when she worked more than forty hours in a workweek, including during the workweeks ending on:  April 26, 2024; May 10, 2024; May 17, 2024; May 24, 2024; May 31, 2024; June 7, 2024; June 23, 2024; July 7, 2024; July 12, 2024; July 19, 2024; July 26, 2024; August 2, 2024.

38.     The defendants did not pay plaintiff Lee one-and-one-half times his regular wage rate when he worked more than forty hours in a workweek, including during the workweeks ending on:  April 19, 2024; April 26, 2024; May 3, 2024; May 10, 2024; May 17, 2024; May 24,

2024; June 7, 2024; June 28, 2024; July 19, 2024; July 26, 2024; August 2, 2024; August 16, 2024.

39.    The defendants did not pay plaintiff Sebastian one-and-one-half times her regular wage rate when she worked more than forty hours in a workweek, including during the workweeks ending on:  July 26, 2024; August 2, 2024; August 9, 2024; August 16, 2024.

40.    Upon information and belief, the defendants had a policy and practice of not paying Filipino physical therapists one-and-one-half times their regular hourly wage rate when they worked more than 40 hours in a workweek.

41.     The defendants did not give plaintiffs the wage notices required by New York Labor Law Section 195(1).

42.    Upon information and belief, the defendants had a policy and practice of not giving Filipino physical therapists the wage notices required by New York Labor Law Section 195(1).

43.    The defendants did not give plaintiffs the wage statements required by New York Labor Law Section 195(3) with every paycheck.

44.    Upon information and belief, the defendants had a policy and practice of not giving Filipino physical therapists the wage statements required by New York Labor Law Section 195(3) with every paycheck.

45.    The defendants' failure to provide the required wage notices and statements caused the plaintiffs to suffer harm, including by concealing the nature and extent of the defendants' failure to pay the required wages and by complicating the plaintiffs' tax planning and preparation.

46.     Upon information and belief, the defendants acted intentionally to deprive the plaintiffs and other Filipino physical therapists of their rightful wages when they designed and implemented the above-described policies and practices.

47.     Upon information and belief, the defendants intentionally violated the law by failing to provide the required wage statements and notices, failing to pay for all the hours worked, and failing to pay the overtime rates of pay required by the FLSA and New York Labor Law.

48.     When Filipino physical therapists attempt to leave and find employment with legitimate employers, the defendants have a policy and practice of demanding that they pay a contract termination fee of $20,000.

49.     On February 16, 2023, the defendants were put on notice that their contract termination fee is unenforceable and constitutes a threat of serious financial harm in violation of the Trafficking Victims Protection Act.

50.     Notwithstanding this knowledge, in August 2024, the defendants threatened the plaintiffs that they would have to pay a contract termination fee of $20,000 if they stopped working before completing three years of service as licensed physical therapists.

51.     The $20,000 contract termination fee is designed to coerce the Filipino physical therapists into continuing their employment with the defendants.

52.     The amount of the $20,000 contract termination fee is disproportionate to the actual costs incurred by the defendants.

53.     The $20,000 contract termination fee is disproportionate to the compensation paid to the Filipino physical therapists.

54.    The purpose of the $20,000 contract termination fee is not to compensate defendants for actual damages.

55.    The purpose of the $20,000 contract termination fee is to obtain and provide the plaintiffs' labor and services to the defendants and their clients.

56.    The purpose of the $20,000 contract termination fee is to deter the plaintiffs from leaving their employment with the defendants.

57.    Plaintiffs reasonably feared that the defendants would sue them for the $20,000 contract termination fee.

58.    The defendants' threat to seek a $20,000 contract termination fee from each of the plaintiffs is part of a deliberate scheme, pattern and plan intended to cause the plaintiffs and other Filipino physical therapists to believe that they would suffer serious harm if they tried to leave the defendants' employ or find other employment.

## Collective and Class Action Claims

59.    Defendants' conduct described above was part of and resulted from policies and practices that the defendants applied to all Filipino physical therapists.  Plaintiffs therefore bring the FLSA claims alleged herein as a collective action pursuant to 29 U.S.C. § 216(b), and the TVPA and state law claims alleged herein as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

60.    The class is comprised of all physical therapists from the Philippines who worked for the defendants at any time since September 3, 2014.

61.    The claims of the class are properly brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

62.    The claims of the class are properly brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

    a.  Numerosity:  The potential members of the class are so numerous that joinder of all members of the class is impracticable.

    b.  Commonality:  There are questions of law and fact common to the plaintiffs and the class that predominate over any questions affecting only individual members of the class.  These common questions of law and fact include:

        i.  whether the defendants' $20,000 contract termination fee is unenforceable under the Anti-Peonage Law, 42 U.S.C. § 1994;

        ii.  whether the defendants' $20,000 contract termination fee constitutes a threat of "serious harm" within the meaning of the Trafficking Victims Protection Act;

        iii.  whether the defendants' $20,000 contract termination fee is an unenforceable penalty under New York law;

        iv.  whether the defendants engaged in a policy and practice of using the $20,000 contract termination fee to coerce Filipino physical therapists to continue working for them;

        v.  whether the defendants engaged in a policy and practice of failing to pay Filipino physical therapists the agreed upon salary;

        vi.  whether the defendants engaged in a policy and practice of failing to pay Filipino physical therapists for all the hours they worked;

        vii.  whether the defendants engaged in a policy and practice of failing to pay Filipino physical therapists one-and-one-half times their regular

hourly rate of pay when they worked more than 40 hours in a workweek;

viii.    whether the defendants engaged in a policy and practice of failing to pay all petition and application fees necessary to obtain authorizations for Filipino physical therapists to work legally in this country;

ix.    whether the defendants engaged in a policy and practice of failing to give Filipino physical therapists the wage notices required by New York Labor Law Section 195(1);

x.    whether the defendants engaged in a policy and practice of failing to give Filipino physical therapists the wage statements required by New York Labor Law Section 195(3) with every wage payment;

xi.    whether the defendants are liable to the class;

xii.    whether the class can be made whole by the payment of damages; and

xiii.    whether defendant Tawdros is personally liable for damages sustained by class members.

c.    Typicality:  Plaintiffs' claims are typical of the claims of the class.  Plaintiffs and all members of the class sustained injuries and damages arising out of and proximately caused by the defendants' policies and practices described above.

d.    Adequacy of Representation:  Plaintiffs will fairly and adequately represent the interest of class members.  Plaintiffs' attorneys are competent and experienced in litigating employment claims, including collective and class actions alleging violations of the TVPA, the FLSA, and the New York Labor Law.

    e.   Superiority:  A class action is superior to other available means for fair and

efficient adjudication of this controversy.  Each class member has been

damaged and is entitled to recovery because of the defendants' illegal policies

and practices.  Individual joinder of all class members is not practicable, and

questions of law and fact common to the class predominate over any questions

affecting only individual members of the class.  Class action treatment will

allow those similarly situated persons to litigate their claims in the manner

that is most efficient and economical for the parties and the judicial system.

**FIRST CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR VIOLATIONS OF**
**THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA)**
**18  U.S.C. § 1595**

63.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

64.    The Trafficking Victims Protection Act (TVPA) imposes liability on anyone who knowingly provides or obtains the labor or services of a person by means of threats of serious harm, the abuse or threatened abuse of law or legal process, or by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm.

65.    The TVPA defines "serious harm" as any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

66.     Contract termination fees between $15,000 and $25,000 have been found to constitute a threat of serious harm as defined in the TVPA.

67.     Defendants knowingly provided and obtained the labor and services of plaintiffs by means of serious harm and threats of serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

68.     Defendants knowingly provided and obtained the labor and services of plaintiffs by means of a scheme, plan, or pattern intended to cause plaintiffs to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

69.     The TVPA defines an "abuse or threatened abuse of law or legal process" as the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

70.     Defendants knowingly provided and obtained the labor and services of plaintiffs by means of the abuse or threatened abuse of law or legal process, including without limitation the use or threatened use of a law or legal process in order to exert pressure on plaintiffs to continue working for the defendants and to refrain from seeking employment elsewhere.

71.     Defendants knowingly benefitted, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by

the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

72.    Defendants knowingly recruited, transported, provided, and obtained plaintiffs for labor or services in violation of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

73.    By reason of the conduct described above, defendants were perpetrators of violations of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

74.    Plaintiffs suffered damages as a direct and proximate result of defendants' conduct.

75.    Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

**SECOND CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR CONSPIRING TO VIOLATE**
**THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA)**
**18  U.S.C. § 1594(b)**

76.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

77.    Defendants Prime Leaders and Tawdros conspired with one another to violate 18 U.S.C. §§ 1589 and 1590.

78.    Defendants Prime Leaders and Tawdros agreed to provide and obtain the labor and services of plaintiffs by means of the abuse or threatened abuse of law or legal process, including without limitation the use or threatened use of a law or legal process in order to exert pressure on plaintiffs to continue working for the defendants or to refrain from seeking employment elsewhere.

79.    Defendants Prime Leaders and Tawdros agreed to provide and obtain the labor and services of plaintiffs by means of serious harm and threats of serious harm to plaintiffs,

including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

80.    Defendants Prime Leaders and Tawdros agreed to provide and obtain the labor and services of plaintiffs by means of a scheme, plan, or pattern intended to cause plaintiffs to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

81.    Defendants Prime Leaders and Tawdros agreed to benefit, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

82.    Defendants Prime Leaders and Tawdros agreed to recruit, transport, provide, and obtain plaintiffs for labor or services in violation of 18 U.S.C. §§ 1589 and 1590.

83.    Each of the defendants engaged in at least one overt act in furtherance of the conspiracy, including:

a.    Defendant Prime Leaders required plaintiffs to execute multiple contracts designed to deceive government authorities concerning the true compensation, terms and conditions of plaintiffs' employment, and it threatened to seek a $20,000 contract termination fee if plaintiffs stopped working for it;

b.   Defendant Tawdros executed the multiple employment contracts and threatened that plaintiffs would have to pay a $20,000 contract termination fee if they stopped working for the defendants.

84.    Each of the defendants intentionally engaged in these acts and additional acts in furtherance of their agreed plan to deny plaintiffs the compensation they were entitled to under the FLSA and their employment agreements and to coerce plaintiffs to continue working for the defendants and not to seek work elsewhere.

85.    Plaintiffs suffered damages as a direct and proximate result of defendants' conspiracy.

86.    Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### THIRD CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS FOR ATTEMPTING TO VIOLATE
### THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
### 18 U.S.C. § 1594(a)

87.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

88.    Defendants attempted to violate 18 U.S.C. §§ 1589 and 1590.

89.    Plaintiffs suffered damages as a direct and proximate result of defendants' attempts to violate 18 U.S.C. §§ 1589 and 1590.

90.    Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### FOURTH CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS FOR VIOLATIONS
### OF THE FAIR LABOR STANDARDS ACT (FLSA)

91.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

92.     The defendants have regulated the employment of plaintiffs and all other persons employed by them, acted directly and indirectly in their own interest in relation to the employees, and are thus employers of their employees within the meaning of section 3(d) of the Fair Labor Standards Act (FLSA).

93.     The individual defendant at all relevant times was in active control and management of the corporate defendant, regulated the employment of plaintiffs and all other persons employed by the corporate defendant, acted directly and indirectly in the interests of himself and the corporate defendant in relation to the employees, and thus is an employer of the defendants' employees within the meaning of section 3(d) of the FLSA.

94.     The business activities of the defendants, as described in this complaint, were related and performed through uniform operation or common control for a common business purpose and constitute an enterprise within the meaning of section 3(r) of the FLSA.

95.     Defendants have employed employees at their places of business in activities of an enterprise engaged in commerce.  The enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00.  Therefore, plaintiffs were at all relevant times employed in an enterprise engaged in commerce within the meaning of section 3(s)(1)(A) of the FLSA.

96.     Defendants willfully and repeatedly violated the provisions of sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215, by employing plaintiffs and other employees in

an enterprise engaged in commerce, for workweeks longer than those prescribed in section 7 of the FLSA, and without compensating them for their employment in excess of the prescribed hours at rates not less than one-and-one-half times the regular rates at which they were employed.

97.     Defendants are liable for unpaid overtime compensation plus an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid overtime compensation plus prejudgment interest on said unpaid overtime compensation, together with reasonable attorneys' fees and the costs of this action.

**FIFTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR VIOLATIONS**
**OF THE NEW YORK LABOR LAW**

98.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

99.     Defendants' failure to pay plaintiffs and other employees the proper overtime pay violated New York Labor Law § 650, *et seq.* and 12 N.Y.C.R.R. § 142-2.2.

100.     Defendants' failure to pay plaintiffs and other employees the proper overtime pay was intentional.

101.     Defendants are liable for unpaid overtime compensation plus an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid overtime compensation plus prejudgment interest on said unpaid compensation, together with reasonable attorneys' fees and the costs of this action.

**SIXTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR VIOLATIONS**
**OF THE NEW YORK LABOR LAW**
**AND WAGE THEFT PREVENTION ACT**

102.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

103.    Defendants did not provide plaintiffs and other employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing:  the regular and overtime rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

104.    Defendants did not obtain from plaintiffs and other employees signed and dated written acknowledgements, in English and in the primary language of the employee, of receipt of the notice required by Section 195(1) of the New York Labor Law and affirmation by the employee that the employee accurately identified his or her primary language to the employer, and that the notice provided by the employer to such employee was in the language so identified.

105.    Defendants did not furnish to plaintiffs and other employees a statement with every payment of wages, listing:  the dates of work covered by that payment of wages; the name of the employee; the name of employer; the address and phone number of the employer; the regular and overtime rate or rates of pay and basis thereof; the gross wages; the number of regular hours worked; the number of overtime hours worked; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

106.    Defendants violated the New York State Wage Theft Prevention Act by failing to provide plaintiffs and other employees with the notices required by Section 195(1) of the New York Labor Law.

107.    Defendants violated the New York State Wage Theft Prevention Act by failing to provide plaintiffs and other employees with the wage statements required by Section 195(3) of the New York Labor Law.

108.    Defendants' violations caused plaintiffs and other employees harm and damages, including without limitation by obfuscating the actual wages they were receiving, by concealing the breaches of their contracts, and by complicating the process of filing their tax returns.

109.    Plaintiffs and other employees are each entitled to recover from defendants statutory damages of $50.00 per day for each day that defendants violated the notice requirements of Section 195(1) of the New York Labor Law, up to a maximum of $5,000.00 for each employee.

110.    Plaintiffs and other employees are each entitled to recover from defendants statutory damages of $250.00 per day for each day that defendants violated the wage statements requirements of Section 195(3) of the New York Labor Law, up to a maximum of $5,000.00 for each employee.

**SEVENTH CLAIM FOR RELIEF
AGAINST ALL DEFENDANTS
FOR BREACH OF CONTRACT**

111.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

112.    Plaintiffs entered into valid and binding contracts with the defendants.

113.    Plaintiffs substantially performed under the contracts.

114.    The defendants breached the contracts by:

    a.  Not paying plaintiffs the salary required by the contracts;

    b.  Not paying plaintiffs for all the hours they worked;

    c.  Not paying plaintiffs for holidays, personal days, and sick days; and

    d.  Not taking all reasonable steps with respect to plaintiffs' immigration petitions and applications, including by failing to pay for those petitions and applications and by making false statements to immigration officials.

**EIGHTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS**
**FOR A DECLARATORY JUDGMENT**

115.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

116.    Defendants breached the plaintiffs' employment contracts by failing to take all reasonable steps to secure their legal authorization to work in this country.

117.    Defendants breached the plaintiffs' employment contracts by failing to pay the salary required by those contracts.

118.    Defendants' breaches of the plaintiffs' employment contracts were material.

119.    Defendants' breaches of the plaintiffs' employment contracts warrant the plaintiffs' termination of those contracts without payment of any damages or fees.

120.    The defendants' contract termination fee is unenforceable under the TVPA.

121.    The defendants' contract termination fee is unenforceable under the Anti-Peonage Law, 42 U.S.C. § 1994.

122.    The defendants' contract termination fee is unenforceable under New York law.

123.    Plaintiffs have a definite and concrete dispute with defendants concerning the enforceability of the contract termination fee, defendants' breaches of their employment contracts, and plaintiffs' right to terminate the contracts.

124.    The dispute touches the legal relations of parties having adverse legal interests.

125.    The dispute is real and substantial.

126.    The dispute admits of specific relief through a decree of a conclusive character.

127.    The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## Jury Demand

128.    Plaintiffs are entitled to and demand a jury trial.

## Prayer for Relief

WHEREFORE plaintiffs, on behalf of themselves and all others similarly situated, demand an order and judgment against each defendant, jointly and severally:  (a) certifying this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and as a collective action pursuant to 29 U.S.C. § 216(b); (b) declaring that the defendants have materially breached plaintiffs' employment contracts, that the breach warrants termination of the contracts, and that the defendants violated the TVPA, the FLSA, the Anti-Peonage Law, 42 U.S.C. § 1994, and New York law; (c) permanently enjoining the defendants from violating the TVPA, the FLSA, the Anti-Peonage Law, and the New York Labor Law; (d) awarding plaintiffs and all collective and class members compensatory damages for violations of the TVPA, the FLSA, and the New York Labor Law; (e) awarding plaintiffs and all class members compensatory damages for breach of contract; (f) awarding plaintiffs and all collective and class members liquidated damages as authorized by 29 U.S.C. § 216(b) and New York Labor Law §

198, and statutory damages and penalties as authorized by New York Labor Law § 195; (g)

awarding plaintiffs and all class members punitive damages for violations of the TVPA; (h)

awarding plaintiffs and all collective and class members pre- and post-judgment interest; (i)

awarding plaintiffs their reasonable attorneys' fees and the costs of this action as authorized by

18 U.S.C. § 1595(a), 29 U.S.C. § 216(b), and New York Labor Law § 198; and (j) granting such

other and further relief as this Court deems just and proper.

Dated:  New York, New York
        September 4, 2024

THE HOWLEY LAW FIRM P.C.

*/s John Howley*

By: _____

    John Howley [JH9764]
*Attorneys for Plaintiffs*
1345 Avenue of the Americas, 2nd Floor
New York, New York  10105
(212) 601-2728